IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

VINCENT CRAIG OLSEN,     )
                     )
          Petitioner,    )    Case No. 1:CV09-81-EJL
                     )
vs.                 )    **MEMORANDUM DECISION**
                     )    **AND ORDER**
STATE OF IDAHO, WARDEN   )
JOHANNA SMITH,        )
                     )
         Respondent.   )
_____ )

Pending before the Court in this habeas corpus case is Respondent's Motion for Summary Dismissal. (Docket No. 12.) Petitioner has filed two responses. (Docket Nos. 23 & 37.) Also pending are several other motions filed by the parties. (Docket Nos. 24, 31, 25 & 37.)

Having reviewed the record, including the state court record, and having considered the arguments of the parties, the Court now enters the following Order granting in part and denying in part the Motion for Summary Dismissal.

## BACKGROUND

This is Petitioner's second federal habeas corpus action. Petitioner's previous action, *Olsen v. State of Idaho*, CV05-0014-S-EJL, was dismissed without prejudice because he had pending state court proceedings. Petitioner completed his state court actions and re-filed his petition in the present case.

The underlying state criminal case arose when Petitioner, a college engineering student, attended a party where he and another college student he had never met, Cameron Davis ("Davis"), had a confrontation, which ended in Petitioner shooting and killing Davis. Petitioner was later charged by indictment with second degree murder and possession of a deadly weapon in the commission of a felony. (State's Lodging C-1, p. 155.)

Petitioner asserted that the killing was in self-defense and/or a mistake. Prior to trial, Petitioner entered an *Alford* plea and, as a result, was convicted of one count of voluntary manslaughter and a weapon enhancement. He was sentenced to ten years fixed, with fifteen years indeterminate. Judgment was entered on December 4, 2003. (State's Lodging A-1, pp. 82-84.)

Petitioner filed a state post-conviction action alleging, among other claims, ten claims of ineffective assistance of counsel. All but three claims were summarily dismissed. (State's Lodging C-14.) The state district court held an evidentiary hearing on Petitioner's three remaining claims: that counsel failed to advise him of the elements of the crime, that counsel failed to file a motion to withdraw the guilty plea, and that counsel failed to file a direct appeal and Rule 35 motion upon Petitioner's request. The Court denied relief on the first two claims, but granted partial relief on the third, entering a new order denying Petitioner's Rule 35 motion for reduction of sentence that permitted Petitioner's appeal time to start again. (State's Lodging D-6, pp. 1-2; A-1, pp. 107-110.)

**MEMORANDUM DECISION AND ORDER  2**

Petitioner appealed the portion of the state court's order denying him relief. Petitioner presented seven issues on appeal before the Idaho Court of Appeals, and, after dismissal was affirmed, Petitioner presented only five issues in his petition for review before the Idaho Supreme Court. (State's Lodgings D-6 through 11.)

As a result of obtaining partial relief in the post-conviction action, Petitioner took advantage of the re-opened appeal time period and raised a claim that the trial court erred in denying his Rule 35 motion for reduction of sentence.  The Idaho Court of Appeals affirmed denial of the motion.  Petitioner filed a petition for review, which was denied by the Idaho Supreme Court.  (State's Lodgings B-1 through B-8.)

Petitioner filed a second Rule 35 motion, this time to correct an illegal sentence. The motion was denied. (State's Lodging E-1.)  Petitioner also filed a motion to withdraw his guilty plea under Rule 33, arguing that the plea agreement had been breached by the State, the plea was rendered involuntary when the State requested restitution, the prosecution's witnesses lied to police and the grand jury, and Sarah Moriarity had changed her testimony at sentencing.  (State's Lodging E-1.)  The state district court denied the motion for lack of jurisdiction.  Petitioner appealed denial of both motions, and the Idaho Court of Appeals affirmed denial.  Petitioner filed a petition for review with the Idaho Supreme Court, which was denied.  (State's Lodgings F-1 through F-7.)

The claims presented in Petitioner's current federal Habeas Corpus Petition are as follows:

**MEMORANDUM DECISION AND ORDER  3**

1.    Trial counsel was ineffective for not investigating false statements and perjured grand jury testimony of state witnesses Brent Leonard and Sarah Moriarity.

2.    Trial counsel was ineffective for failing to move to withdraw the guilty plea during sentencing (grounds: false testimony of Leonard and Moriarity), as requested by Petitioner.

3.    Trial counsel was ineffective for not informing Petitioner during sentencing or after of the possibility of withdrawing his plea after Moriarity's testimony.

4.    The state district court erred in not halting the sentencing hearing to investigate further after Moriarity allegedly falsely testified.

5.    Prosecutorial misconduct for using falsified evidence and perjured testimony, and for withholding exculpatory evidence to acquire an indictment and coerce an involuntary plea.

6.    Selective and vindictive prosecution for prosecuting Petitioner but not the state witnesses who committed perjury.

7.    Trial counsel was ineffective for failing to inform Petitioner of the direct consequences of restitution that accompanied a plea of guilty.

8.    The prosecution breached the plea agreement by unilaterally adding a restitution term after the guilty plea had been entered.

9.    The state district court erred by breaching the plea agreement by ordering restitution.

10.   Counsel was ineffective for coercing an involuntary plea by telling Petitioner that if he pled guilty, he would likely receive a 6-month sentence, and at worst, not more than a 7-year sentence.

11.   Counsel was ineffective for failing to inform Petitioner of the elements necessary to provide the crimes he was charged with and those to which he pled guilty.

12.   Petitioner's plea was made unknowingly and involuntarily because he never read the indictment, it was never read to him, and he did not know the correct description of the charges to which he pled.

**MEMORANDUM DECISION AND ORDER  4**

13.   The indictment was fatally flawed since it was based on the falsified and perjured testimony of state witnesses Sarah Moriarity and Brent Leonard, and thus the plea was involuntary and invalid.

14.   Counsel was ineffective for failing to file an appeal of the *sentence* when requested.

15.   Counsel was ineffective for failing to file an appeal of the *conviction* when requested.

16.   Counsel was ineffective for not moving to withdraw the guilty plea and not moving for a new trial when requested by Petitioner, based on the false statements and perjured grand jury testimony of state witnesses Brent Leonard and Sarah Moriarity.

17.   Counsel was ineffective for failing to inform Petitioner of appealable issues that could have been raised on appeal of the sentence and conviction.

18.   Counsel was ineffective for failing to inform petitioner of collateral attacks on the conviction including appeal of the conviction, a Rule 33 motion to withdraw the guilty plea, and a Rule 34 motion for a new trial.

19.   The conviction is invalid because the strong factual basis the state district court relied upon for an Alford plea was the grand jury transcript which contained the falsified and perjured testimony of state witnesses Moriarity and Leonard.

20.   Counsel was ineffective for failing to file a motion for a change of venue despite extensive negative pretrial publicity.

21.   Counsel was ineffective for failing to investigate, interview and subpoena witnesses requested by Petitioner, including Andre Lopez, Deangelo Norwood, Heather Woods, and Saam Motlagh.

22.   Counsel was ineffective for failing to permit Petitioner to view or hear recordings of interviews conducted by the defense or tapes of police interviews.

23.   Counsel was ineffective for failing to submit Petitioner to a psychological evaluation prior to sentencing, despite Petitioner's request.

24.   Counsel was ineffective for not objecting to the indictment when Petitioner told him that Moriarity and Leonard had lied during the grand jury hearing; counsel

was ineffective for not objecting to the indictment after Moriarity testified at the sentencing hearing that she and Leonard had conspired to lie to police and the grand jury.

25.  The prosecution failed to disclose witnesses Dustin Wiekewicz, Nichols McElrea, and Josh Hendrickson, who had been interviewed by police officers and who could provide testimony proving Petitioner's innocence.

26.  The prosecution engaged in misconduct by withholding from the defense exculpatory evidence including the testimony of Moriarity that state witnesses colluded to lie to police and the grand jury and not disclosing witnesses Nichols McElrea and Josh Hendrickson.

27.  The prosecution's entry of evidence of Petitioner's bad acts deprived Petitioner of a fair trial and sentencing hearing.

28.  The firearm enhancement constitutes double jeopardy.

29.  Counsel was ineffective for not fully preparing a defense to the State's witness Jade Bowen.

30.  Counsel was ineffective for failing to object to continuing with the sentencing hearing after the prosecution's request for restitution and after Moriarity's testimony.

31.  Petitioner is actually innocent of his conviction because he did not intend to harm or kill the victim, and he did not act willfully in a heat of passion or upon a sudden quarrel.

32.  The sentence is flawed and illegal because the sentence is for a crime that does not literally exist within the Idaho Code, and thus, the court lacked jurisdiction to enter it.

## PRELIMINARY MOTIONS

Petitioner filed a Motion for Extension of Time to Respond to Respondent's Motion for Partial Summary Judgment.  (Docket No. 24.)  Good cause appearing, the Motion is granted.  Petitioner's Response filed at Docket No. 23 is considered timely.

Respondent filed two Motions for Leave to File Excess Pages, based on the large number of claims that needed to be addressed.  (Docket Nos. 31 & 35.)  Good cause appearing, the Motions are granted.  The Court has considered the entirety of Respondent's overlength filings.

Petitioner has filed a Motion to File a Second Supplemental Response Brief. (Docket No. 37.)  He includes the brief in the text of his filing.  Petitioner was recently supplied with additional portions of the state court record, warranting an additional response.  Good cause appearing, the Motion is granted, and the Court has considered Petitioner's supplemental filing.

## MOTION FOR SUMMARY DISMISSAL

Respondents allege that the following claims in the Petition are subject to dismissal based on procedural default: Claims 2, 3, 4, 5, 6, 8, 9, 11, 12, 13, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31.  That would leave only the following claims for adjudication on the merits: 1, 7, 10, 14, 15, 20, and 32.

**A.      Standard of Law Governing Procedural Default**

A federal habeas corpus petition must allege that the petitioner is held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Upon receipt of such a petition, a federal district court must review the petition to determine whether it is subject to summary dismissal.  Summary dismissal is appropriate where "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4 of the Rules Governing § 2254 Cases.

Unless a petitioner has properly exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim.  28 U.S.C. § 2254(b)(2).  State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available.  *O'Sullivan*, 526 U.S. at 848.  A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground.  *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991).  Under these circumstances, the claim is considered to have been "procedurally defaulted."  *Coleman,* 501 U.S. at 731.  A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the

default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

**B.     Discussion of Procedural Default**

The Court now reviews each of the three petitions for review presented to the Idaho Supreme Court to determine whether the petitions can be construed to have included any of the claims that Respondent asserts are procedurally defaulted. Where appropriate, the Court will also consider the parties' arguments on specific claims.

1.     Petitioner's First Petition for Review to the Idaho Supreme Court

In Petitioner's petition for review of denial of his first Rule 35 motion for reduction of sentence, Petitioner argued only that his sentence was excessive under state law. (State's Lodging B-1 & B-6.) This is not a federal claim. Therefore, this action did not serve to exhaust any of the claims brought in the current federal habeas corpus petition.

2.     Petitioner's Second Petition for Review

On appeal of the post-conviction case, Petitioner presented five claims in his petition for review before the Idaho Supreme Court, which he numbered as follows: 9(c) counsel failed to file a motion for change of venue; 9(e) counsel failed to consult with Petitioner adequately about his case and prepare him for trial, contributing to Petitioner's involuntary decision to plead guilty; 9(f) counsel failed to advise Petitioner of the penalties of pleading guilty to voluntary manslaughter; 9(g) counsel failed to move to withdraw the guilty plea at sentencing based on Sarah Moriarity's testimony that Brent

Leonard asked her not to report that the victim had struck Olsen prior to the shooting; and 9(j) counsel failed to file a direct appeal from his judgment of conviction. (State's Lodging D-9, p. 2.)

After reviewing the state court record in comparison to the claims brought in the federal habeas corpus petition, the Court concludes as follows: former claim 9(c) exhausted Claim 20; former claim 9(e) exhausted Claim 1; former claim 9(f) exhausted Claims 7 & 10; and former claim 9(j) exhausted Claim 14 & 15. This conclusion is consistent with Respondent's assertions in the Motion to Dismiss.

The Court agrees with Respondent that former claim 9(g) did not exhaust Claim 16, for the following reasons. In the post-conviction petition, Petitioner alleged only that trial counsel was ineffective for failing to move to withdraw the guilty plea "*when requested by the Petitioner.*" (State's Lodging C-1, Amended Petition for Post-Conviction Relief, pp. 79-80.) After an evidentiary hearing, the state district court found that Petitioner never made such a request. (State's Lodging C-1, Findings of Fact, pp. 158-59.)

On appeal, the Idaho Court of Appeals determined that it was improper for Petitioner to attempt to bring two related but different claims that were not presented to the court below:

> Olsen does not challenge the district court's finding that he never made such a request. Instead, he argues that the district court erred by not holding that counsel should have, nevertheless, filed a motion to withdraw even absent a request from Olsen. Furthermore, he contends that the district court erred by not holding that trial counsel failed to advise him of the

possibility of such a motion.  Neither of these arguments are contained in Olsen's post-conviction claim that counsel was ineffective for failing to withdraw his guilty plea when he so instructed.  Therefore, we need not address them further.

(State's Lodging D-6, pp. 11-12.)

The Court concludes that part one of Claim 16 (that counsel failed to file a motion to withdraw the guilty plea *without Petitioner's request*) is procedurally defaulted because, as the Idaho Court of Appeals noted, Petitioner may not bring new claims before the Idaho Court of Appeals.  The general and longstanding rule in Idaho is that issues not raised in the lower courts may not be considered for the first time on appeal.  *University of Utah Hosp. v. Board of Com'rs of Payette County*, 915 P.2d 1375, 1379 (Idaho Ct. App. 1996); *Sanchez v. Arave*, 815 P.2d 1061, 1062 (Idaho 1991); *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 803 P.2d 993, 999 ( Idaho 1991).  While Petitioner also attempted to raise this issue before the Idaho Supreme Court, there is nothing in Idaho precedent suggesting a practice or trend of addressing claims presented for the first time in a petition for review before the Idaho Supreme Court.  *See, e.g., Accord Wood v. Wood*, 855 P.2d 473 (Idaho Ct. App. 1993); *Cooper v. Board of Professional Discipline of Idaho State Bd. of Medicine*, 4 P.3d 561, 568 (Idaho 2000). As a result, the Court concludes that Claim 16 is procedurally defaulted, having been rejected by the Idaho Court of Appeals on an adequate and independent state ground.[1]

---

[1]  In order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief.  *See Harris v. Reed*, 489 U.S. 255 (1989); *Ford v. Georgia*, 498 U.S. 411, 422-24

**MEMORANDUM DECISION AND ORDER  11**

Respondent further argues that part two of Claim 16 is procedurally defaulted because Petitioner failed to bring a claim that counsel was ineffective for failure to request *a new trial* in his post-conviction petition.  The Court agrees, following the reasoning and precedent cited directly above.

The Court, however, disagrees with Respondent's analysis of Claim 2 (counsel failed to file a motion to withdraw the guilty plea *as requested*).  The Idaho Court of Appeals thoroughly analyzed and reviewed the merits of this claim in its opinion.  In fact, the entire section in which this analysis is found in the Idaho Court of Appeals' opinion is entitled, "Failure to file a motion to withdraw guilty plea as requested."  (State's Lodging D-6, p. 11.)  The Idaho Court of Appeals concluded: "Based on our review of the record, we conclude that Olsen failed to meet his evidentiary burden of proving that he requested that trial counsel file a motion to withdraw his guilty plea."  (State's Lodging D-6, p. 11.)

To support the procedural default argument, Respondent narrowly focuses on a statement the Court made *after* its analysis and conclusion, which was that Petitioner did not challenge on appeal the state district court's factual finding that Petitioner never made

_____

(1991).

"'In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.'"  *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).  Where there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to [state] law," the decision does not rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may not be applied to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action.  *Id.*  The State bears the ultimate burden of proving the adequacy of a state procedural bar to preclude federal habeas relief.  *Bennett v. Mueller,* 296 F.3d 752 (9th Cir. 2002).

**MEMORANDUM DECISION AND ORDER  12**

a request.  (State's Lodging D-6, p. 12.)   However, the state appellate court does not appear to have invoked Petitioner's failure to challenge the factual finding of the state district court as a procedural bar to review at all, but instead used this statement to show that the Idaho Court of Appeals would not review Petitioner's new claims.

Based on all of the foregoing, the Court concludes that Claim 2, that counsel failed to file a motion to withdraw his guilty plea as requested, is properly exhausted.  The fact that Petitioner failed to challenge the factual finding of the state district court on appeal presents an interesting legal issue as a matter of habeas corpus procedure, but because the standards for proving a claim under either 28 U.S.C. § 2254(d)(1) (incorrect legal determination), or 2254(d)(2) (incorrect factual determination) are both very high, it may be unnecessary to address how Petitioner's failure to challenge on appeal the fact-finding from the evidentiary hearing bears on his habeas corpus claim.

    3.    <u>Petitioner's Third Petition for Review</u>

In his third petition for review before the Idaho Supreme Court, Petitioner alleged that the trial court erred by denying his motion to withdraw his guilty plea under Rule 33 on the basis that it had no jurisdiction because of the lateness of the motion.  (State's Lodging F-6.)

Petitioner also argued that the trial court erred in denying his motion for correction of illegal sentence under Rule 35.  Petitioner argued his sentence was illegal for the following reasons: he pled guilty to two charges, voluntary manslaughter and the use of a firearm in the commission of a felony, but he was sentenced for the charge of

**MEMORANDUM DECISION AND ORDER  13**

voluntary manslaughter with a deadly weapon, not a named crime in the Idaho Code; his sentence for voluntary manslaughter exceeds the fifteen-year maximum; and his sentence was not pronounced in separate segments, rendering it illegal.  (*Id.*)

These claims match current Claim 32, and Respondent has not sought dismissal of this claim.  Therefore, Petitioner can proceed to the merits of Claim 32.

## C.    Petitioner's Arguments that Claims Were Properly Presented

The Court rejects Petitioner's arguments that his claims were, in fact, properly presented to the Idaho Supreme Court, for the following reasons.

Petitioner argues that he presented Claims 4, 8, and 9 in state court in the context of presenting the claim that his counsel failed to file a direct appeal.  However, because the issues were not raised in state court as *separate claims*, in federal court Petitioner may raise these issues in the same manner as he raised them in state court–as support for the claim that counsel failed to file a direct appeal (Claims 14 & 15, for which Petitioner has been authorized to proceed on the merits).  He may not raise them as separate claims here.

Petitioner's Claims 5 and 6 were not included as claims in his amended post-conviction petition.  Neither were they included in the amended appellate brief before the Idaho Court of Appeals, nor in the petition for review before the Idaho Supreme Court.  (State's Lodgings C-1, pp. 77-82, D-3, & D-9.)  These claims were not properly presented as claims or as factual support for another claim.

In Petitioner's amended post-conviction appellate brief , Claims 8, 9, and 17 were raised as factual grounds for Claim 15 (former claim 9(j)).  (State's Lodging D-3, pp. 15,

MEMORANDUM DECISION AND ORDER  14

16, & 18.)  Therefore, he may use these issues as factual support for Claim 15 in federal court to the extent he raised them in state court, but he may not raise them as independent claims.

Claim 18 was not presented in the amended post-conviction petition.  (State's Lodging C-1, pp. 78-80.)  Petitioner mentioned it in the amended appellate brief before the Idaho Court of Appeals as support for the claim that his two defense counsel were ineffective for failing to file a direct appeal.  (State's Lodging D-3, p. 18.)  However, Claim 18, that counsel did not file or inform Petitioner of *collateral avenues of relief* is different from a claim that counsel failed to file *a direct appeal*.  The Idaho Court of Appeals did not address the issue of collateral challenges as a claim or as factual support for the direct appeal claim.  (State's Lodging D-6.)  The claim was not included in the petition for review; Petitioner stated only that the court should "grant claim 9(j) reinstating Olsen's right to direct appeal."  (State's Lodging D-9, p. 2.)  Therefore, here, Petitioner may not proceed with the claim as a separate claim or as factual support for Claims 14 & 15.

Petitioner's Claims 11 and 12 (numbered as Claim 9(d) in the state court record) were included in his amended appellate brief before the Idaho Court of Appeals (State's Lodging D-3), but they were not included in the petition for review before the Idaho Supreme Court (State's Lodging D-9.)  Petitioner specifically set forth the claims to be reviewed in the petition for review.  He also included a catch-all statement asking the Idaho Supreme Court to "read, review, and take notice of the Record on appeal,"

including the briefing.  (State's Lodging D-9, p. 2.)  This is not proper exhaustion.  In *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2005), the United States Court of Appeals for the Ninth Circuit  clarified that, "[t]o exhaust his claim, [a petitioner] must have presented his federal, constitutional issue before the [state appellate courts] within the four corners of his appellate briefing."  *Id.* at 1000 (citing *Baldwin v. Reese*, 541 U.S. 27 (2004).  State appellate courts are "not required to comb the trial court's decision to discover [a] federal constitutional issue."  *Castillo*, 399 F.3d at 1000.  Similarly, here, the Idaho Supreme Court did not have to accept Petitioner's invitation to scour the record for an appealable issue that was not listed in Petitioner's specific statement of issues. Therefore, these claims were not fairly presented to the Idaho appellate courts.

Claim 23 was raised in Petitioner's appellate brief before the Idaho Court of Appeals as part of former claim 9(h), but 9(h) was not included as a reviewable issue in the petition for review before the Idaho Supreme Court.  (State's Lodging D-9, p. 2.) Therefore, it was not properly presented.

Claims 25 and 28 were raised in the amended post-conviction petition.  They were not included in the "Issues Presented on Appeal" section of the amended post-conviction brief, nor were they included in the petition for review.  (State's Lodgings D-3, p. 4 & D-9,p. 2.)  Therefore, the claims were not properly presented.

Neither Claim 29 nor facts supporting that claim were included in the amended post-conviction appellate brief.  This claim was not included in the petition for review. (State's Lodgings D-3 & D-9.)  The same is true of Claims 13, 19, 21, 22, 24, and 30.

**D.      Noncognizable Claim**

Claim 31, actual innocence, is not cognizable in a noncapital case and is dismissed. *See Herrera  v. Collins*, 506 U.S. 390, 404-05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); *cf. Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (availability of actual innocence claim in capital cases unclear).

**E.      Discussion of Petitioner's Arguments against Application of Procedural Default**

  1.      <u>Title 28 U.S.C. § 2254(b)(1)(B) Argument</u>

As to the claims that are procedurally defaulted, Petitioner argues that he should not be required to exhaust his claims under 28 U.S.C. § 2254(b)(1)(B) because either "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." *Id*.

Petitioner argues that "[t]here were inadequacies in the state court procedures limiting exhaustion." (Response, p., 2, Docket No. 23.)  He states that "Idaho appellate courts are not permitted to review factual determinations of a lower court, even when they are wrong or false, absent a showing of extreme judicial abuse or clear error." (*Id*.)  This is a well-recognized, adequate review standard, with an appropriate purpose–appellate courts do not have the opportunity to review a witness's demeanor–and it is *not* a ground for holding that the state procedural bar is inadequate.  In short, there were no state bars

to Petitioner challenging the factual findings of the state district court on appeal; Petitioner simply disagrees with the standard of law to be applied to such claims.

Petitioner next argues that the state court procedures are inadequate because "[c]laims raised before the Idaho district court cannot then be raised exactly the same before the appellate and supreme courts." (Response, p. 2, Docket No. 23.) He further argues that "[t]he appellate court only reviews issues of how the district court erred, and the supreme court only reviews issues of how the appellate court erred." (*Id*.) The Court rejects this argument. All that is required for exhaustion is to bring the same facts and the same legal basis before each Court. That a petitioner is additionally required to state how the previous court erred in determining the factual and/or legal basis of the claim does not "change" the nature of the claim or render the state procedures inadequate to protect litigants' rights.

Petitioner also argues that the state appellate process was inadequate because the Idaho Court of Appeals construed too narrowly his claim that his two counsel were ineffective for failing to file a motion to withdraw the guilty plea. Petitioner argues that the state courts and Respondent are "splitting hairs" on Claims 2, 3, & 16 (former claim 9(g)), and that he should be permitted to proceed on several alternative versions of the same claim: (1) whether trial counsel, Mark and David Manweiler, were ineffective for failing to move to withdraw the guilty plea *as requested by Petitioner*; (2) whether counsel were ineffective for failing to advise Petitioner that he *could have* withdrawn the guilty plea, *though not requested by Petitioner*; and (3) whether counsel were ineffective

MEMORANDUM DECISION AND ORDER  18

for not filing a motion to withdraw the guilty plea, *though not requested by Petitioner*. The Court disagrees with Petitioner's argument for the following reasons.

In his post-conviction petition, Petitioner alleged that the factual basis of the claim was that he *requested* counsel to file a motion to withdraw; the legal basis of the claim was that counsel was ineffective for failing to file the motion Petitioner requested.  The state district court did not summarily dismiss the claim, but instead permitted the claim to proceed to an evidentiary hearing for a credibility determination, because (1) the factual basis of the claim, in Petitioner's own words, was that "[a]t a recess of the sentencing hearing, I asked my attorneys to withdraw my guilty plea"; (2) trial counsel denied that a request was made by Petitioner; (3) the nature of the factual dispute precluded any argument by counsel that the failure to file such a motion "was the product of consideration or professional judgment by counsel"; (4) had counsel failed to file a motion to withdraw the guilty plea in the face of a request to do so, it would have been deficient performance; and (5) had a motion to withdraw the plea been filed, there was a reasonable probability that it would have been granted.  (State's Lodging C-14, pp. 24-25.)

After an evidentiary hearing, the state district court found that Petitioner had *not* requested counsel to file a motion to withdraw; hence, the court concluded that there was no factual basis for the ineffective assistance of counsel claim as raised.  (State's Lodging C-1, pp. 158-59.)  Petitioner argues that the elements of *an* ineffective assistance of counsel claim were met, regardless of *the* particular ineffective assistance of counsel

claim that Petitioner had actually brought.  On appeal, the Court of Appeals refused to consider the alternative claims that, even if counsel had *not* been asked to file a motion to withdraw, they were ineffective for failing to raise the issue with petitioner or failing to file the motion on their own.

Petitioner now reasons that he originally did not raise the alternative claims in his post-conviction hearing because he did not know that counsel would be untruthful at the hearing and testify that Petitioner never requested withdrawal of the plea.  However, this argument merely highlights the fact that Petitioner's claim of error centers on the claim that *is* exhausted--the outcome of the state district court evidentiary hearing.  On post-conviction review, Petitioner could have raised any number of withdrawal-of-guilty-plea claims that do not have inconsistent factual bases, but he chose to raise the claim that counsel did not file a motion to withdraw the guilty plea *after he requested it at a recess in the sentencing hearing*.

The law does not permit Petitioner to change or omit his testimony to meet the elements of a different ineffective assistance of counsel claim on appeal.[2]  *See Kennedy v.*

---

[2]  In his brief in support of amended petition for post-conviction relief, Petitioner stated:

[I]f a defendant communicates his desire to move to withdraw his plea to counsel, counsel has an obligation to consult with him about that motion, and subsequently to move the court to withdraw the plea if the defendant continues to insist.  A failure to consult with a defendant once he has communicated his desire to withdraw a plea is deficient representation.

Petitioner states in his second affidavit that he communicated his desire to withdraw his plea to counsel following the testimony of Sarah Moriarty.

**MEMORANDUM DECISION AND ORDER  20**

*Allied Mutual*, 952 F.2d 262, 266 (9th Cir. 1991) (a party may not contradict himself to gain a legal advantage). Petitioner did not argue or make a claim that he was *unaware* of the possibility that a motion to withdraw the guilty plea could have been made; rather, his argument was that he was *aware* of the possibility and counsel simply fell down on the job in filing the motion. The positions are inconsistent. Either Petitioner knew *or* he didn't know of the motion; he cannot now argue both that he knew *and* didn't know. Because Petitioner's chosen set of facts included his awareness of the ability to file a motion to withdraw the guilty plea, he cannot change his claim on appeal or habeas corpus to rest upon different facts. Instead, his path is to show that the outcome of the evidentiary hearing was erroneous.

In addition, because Petitioner's claim focused on whether counsel did not file a motion for withdrawal of the guilty plea when requested by counsel, there was no factual development at the evidentiary hearing on his new related, but different claims. For example, there was no evidence presented on whether failure to file such a motion "was the product of consideration or professional judgment by counsel," as the state district court noted in its order denying summary dismissal. (State's Lodging C-14, pp. 24-25.)

---

          * * *

By not bringing the motion at the moment requested, prior to sentencing, Petitioner loses the benefit of being subject to a less rigorous standard for withdrawal of his guilty plea.

(State's Lodging C-12, pp. 11-12.)

**MEMORANDUM DECISION AND ORDER  21**

Therefore, there was an inadequate record to consider the new claims on appeal, which is precisely the reason why new claims cannot be presented on appeal for the first time.

The Court rejects Petitioner's argument that the Court of Appeals should have permitted him to either contradict himself or change his position on appeal without having developed the facts in the state district court.  Petitioner has not shown that there is an absence of state court process or that it is ineffective to protect his rights.  Therefore, in this habeas corpus proceeding, Petitioner may not proceed on Claim 3 or 16, but he may proceed on Claim 2, as noted herein above.

2.   Argument that State Procedural Untimeliness Bar is Not Adequate

Petitioner also argues that the state procedural rule rendering his motion to withdraw guilty plea untimely is not adequate to constitute a procedural default for federal court purposes.  "'In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.'"  *Martinez v. Klauser,* 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).  Particularly, the *Martinez* Court explained that when there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to [state] law," such a decision does *not* rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may *not* be applied to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action.  *Id.*

MEMORANDUM DECISION AND ORDER  22

Determining whether a rule is adequate and independent involves a burden-shifting process. In *King v. Lamarque*, 464 F.3d 963 (9th Cir. 2006), the Ninth Circuit Court explained:

> Once the government has pleaded "the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner." [*Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003)]. The petitioner "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. The burden then shifts back to the government, and it bears "the ultimate burden of proving the adequacy" of the relied-upon ground. *Id*. at 585-86.

*Id*. at 966-67.  "A state procedural rule is adequate if the state courts follow it 'in the vast majority of cases.'"  *High v. Ignacio*, 408 F.3d 585, 587 n.1 (9th Cir. 2005) (quoting *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996)).

Petitioner particularly argues that Idaho Criminal Rule 33(c), governing withdrawal of guilty pleas, is inadequate because it does not provide a time limit for filing and implies that a motion can be filed at any time.  He also asserts that the time limit was not consistently applied.  Idaho Criminal Rule 33(c) provides: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw defendant's plea."

Petitioner's conviction was entered on December 4, 2003.  Two months *prior* to entry of his conviction, the Idaho Supreme Court clarified that a state district court is without jurisdiction to consider a motion to withdraw a guilty plea after judgment become

final in the case.  *See State v. Jakoski*, 79 P.3d 711 (Idaho 2003).  Before *Jakoski*, Idaho

law on this subject was unsettled.[3]  However, once *Jakoski* was decided in 2003, the law

governing timing of motions for withdrawal of pleas was clear.

In his state criminal case, Petitioner filed his motion to withdraw his guilty plea

four years after judgment, on September 24, 2007.  By 2007, the law was well-established

that a state district court was without jurisdiction to consider a motion filed so late.  *See,*

*e.g., State v. Armstrong*, 195 P.3d 731 (Idaho Ct. App. 2008) (district court did not have

jurisdiction to withdraw initial plea five months after it was entered, rendering subsequent

plea and sentence void).  A survey of Idaho case law shows that this rule was firmly

established in 2003 and that is has not been inconsistently applied in any case after that

date, including in 2007, given that the relevant time period is "at the time of the

petitioner's purported default.'"  *Martinez v. Klauser,* 266 F.3d at 1093; *see Rogers v.*

*Howes*, 144 F.3d 990 (6th Cir. 1998) (*citing Ford v. Georgia*, 498 U.S. 411, 423-24

(1991) (rule must be firmly established and regularly followed by the time as of which it

[was] to be applied)); *Jones v. Ayers*, 2008 WL 906302 (E.D. Cal. 2008) (relevant time

period is when the default *was imposed* upon the petitioner).

---

[3]  In the Idaho Court of Appeals' decision in *Jakoski*--issued before the Supreme Court
accepted review in the case--each of the three judges wrote a separate opinion on the timeliness
issue.  *See State v. Jakoski*, 2002 WL 31855374 (Idaho Ct. App. 2002).  Though the judges
agreed that some deadline for Rule 33(c) motions must exist, they disagreed on when that
deadline was.  *See id.*  The law provides that it is appropriate to review unpublished opinions to
determine whether a state procedural law is consistently applied.  *Powell v. Lambert*, 357 F.3d
871, 879 (9th Cir. 2004).)

**MEMORANDUM DECISION AND ORDER  24**

The reasoning behind the adequacy rule is that "[n]ovelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." *Ford v. Georgia*, 498 U.S. 411, 423 (1991) (citation omitted).  In 2007, Petitioner had no reason to rely upon any law except *Jakoski*. Therefore, the Court concludes that the rule has not been applied inconsistently, and Petitioner's argument fails.[4]

## F.    Discussion of Cause and Prejudice

Claims that are procedurally defaulted cannot be heard on the merits unless the Petitioner shows that the cause and prejudice or miscarriage of justice exception applies to excuse the default.  To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his

---

[4]  Petitioner's argument that he did not have access to a copy of the *Jakoski* opinion in 2003 is not an *inadequacy* argument, but a cause and prejudice-type argument that is equally unavailing, because Petitioner has not shown that he made any effort to use the legal resource center to file a motion to withdraw guilty plea during the 42-day period that option was available to him.  *See Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (prisoner who did not show that he himself was denied access to the legal resource center could not rely on an allegation that the prison law library had generally poor access to demonstrate "cause").

entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner argues that his claim of ineffective assistance of counsel should excuse the procedural default of other claims.  Petitioner also asserts that his state appellate and post-conviction attorneys provided ineffective assistance of counsel.  An attorney's errors that rise to the level of a violation of the Sixth Amendment's right to effective assistance of counsel may, under certain circumstances, serve as a cause to excuse the procedural default of other claims, *Murray v. Carrier*, 477 U.S. at 488; however, an allegation of ineffective assistance of counsel will serve as cause to excuse the default of other claims *only* if the ineffective assistance claim is, itself, not procedurally defaulted, or if the petitioner also can show cause and prejudice for the default of the ineffective assistance of counsel claim that would serve as "cause" for the other claims.  *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000).  In other words, before a federal court can consider ineffective assistance as cause to excuse the default of underlying habeas claims, a petitioner generally must have presented the ineffective assistance claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition.  Therefore, any claim found to be procedurally defaulted herein above may not serve as cause for any other claim.

Petitioner does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *see also Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).  Consequently, any

**MEMORANDUM DECISION AND ORDER  26**

shortcomings of his counsel during the post-conviction action cannot serve as a basis for cause to excuse Petitioner's procedural default of his other federal claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("a petitioner cannot claim constitutionally ineffective assistance of counsel in [post-conviction] proceedings"). Hence, ineffective assistance of post-conviction counsel is not adequate cause.

Petitioner also alleges that his trial attorneys' failure to file a direct appeal is cause for the default of the claims that could have been presented on direct appeal. Petitioner brought this claim on post-conviction review, and was granted relief *only* on the portion of the claim that counsel failed to file an appeal of the motion for Rule 35 relief (reduction of sentence). The Court re-entered the order denying Rule 35 relief, and an appeal was filed. As a result, Petitioner received all the relief to which he was entitled on the narrow claim that Petitioner's counsel failed to file a Rule 35 motion. Therefore, that portion of the claim is not relevant in the procedural default context.

Petitioner thereafter fully exhausted a claim that trial counsel failed to file a direct appeal. (State's Lodgings D-3 & D-9.)[5] Assuming that the ineffective-assistance-of-counsel-on-direct-appeal claim constitutes "cause," the Court notes that Petitioner must still show prejudice, which means that the alleged constitutional violation "worked to his

---

[5] On the question of whether counsel had been ineffective in failing to file a direct appeal, the post-conviction court specifically made the factual finding that Petitioner did *not* ask his counsel to file an appeal, causing the ineffective assistance claim to be denied. (State's Lodging C-1, p. 160.) Denial of the claim was affirmed on appeal. (State's Lodging D-6, pp. 12-13.)

**MEMORANDUM DECISION AND ORDER  27**

actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).  At the next stage, summary judgment, Petitioner shall be permitted to file a brief to make this showing for any claim for which the ineffective-assistance-of-counsel-on-direct-appeal claim would be "cause," that is, only claims that could have been brought on direct appeal in the context of an *Alford* plea;[6] Respondent may then file a response.

Petitioner next argues that post-conviction counsel prevented him from exhausting certain claims because counsel refused to include them in the amended post-conviction petition.  Petitioner states that he filed a pro se motion for appointment of new counsel, explaining to the district court that counsel had refused to file some of Petitioner's claims. Petitioner states that he elected to remain represented rather than proceed pro se because he needed counsel to conduct interviews and other discovery in the post-conviction action. Petitioner's counsel objected to Petitioner's insistence in filing 42 claims with accompanying legal authority for each.  Petitioner's request for appointment of new counsel was denied.  (State's Lodging C-1, p. 53-76.)

The Court concludes that, in state court, Petitioner made a voluntary choice to file fewer claims and have the benefit of counsel, rather than file more claims without the

---

[6]  For example, Idaho appellate courts ordinarily do not "address claims of ineffective assistance of counsel on direct appeal because the record is often not fully developed."  *State v. Elison*, 21 P.3d 483, 488-89 (Idaho 2001).  Rather, such claims are properly presented after post-conviction review.

benefit of counsel.  Therefore, Petitioner's choice rests with himself, and his own decision cannot be deemed an external "cause" for the default of some of his federal claims.

G.    **Discussion of Actual Innocence**

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  *Murray v. Carrier*, 477 U.S. at 496.  To satisfy this standard, a petitioner must make a colorable showing of factual innocence.  *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  If a petitioner brings forward new evidence not presented at trial which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 329 (1995).  Upon such a showing, a petitioner may proceed with his claims, provided that his claim of actual innocence is accompanied by an assertion of nonharmless constitutional error at trial.  *Id.* at 316.

Where the defendant pled guilty and did not have the evidence in his case evaluated by a jury, the petitioner must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ."  *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Jaramillo v. Stewart*, 340 F.3d 877 (9th Cir. 2003) (leaving open the question of

whether AEDPA raised the *Schlup* "more likely than not" standard to a "clear and convincing evidence" standard).

The new evidence of innocence must be "so strong that [the court] cannot have confidence in [the guilty plea]." *Schlup*, 513 U.S. at 316.   In applying the actual innocence exception to a similar set of circumstances in *Smith v. Baldwin*, 510 F.3d 1127 (9th Cir. 2007), the Ninth Circuit Court of Appeals reasoned:

> Had Smith gone to trial on the felony murder charge, he would have had the burden of proving all five elements of the affirmative defense by a preponderance of the evidence. *Id.* § 161.055(2). Accordingly, to pass through the *Schlup* actual innocence gateway, Smith must prove that it is more likely than not that no reasonable juror would have found that he failed to establish any of the five elements of the affirmative defense by a preponderance of the evidence. *See Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003); *Griffin v. Johnson*, 350 F.3d 956, 963-64 (9th Cir. 2003).

*Id.* at 1140 (assuming without deciding that the actual innocence exception applies to a no contest or guilty plea).   In assessing new evidence, habeas corpus courts consider all of the evidence and may have to make some credibility assessments.  *See House v. Bell*, 547 U.S. 518, 538-40 (2006).

Here, Petitioner was originally charged with second degree murder.  He pled guilty to voluntary manslaughter under Idaho Code § 18-4006, with an enhancement for use of a firearm under Idaho Code § 19-2520.  The elements of voluntary manslaughter are: "the unlawful killing of a human being . . . without malice . . . upon a sudden quarrel or heat of passion."  Idaho Code § 18-4006.  The elements of a firearm enhancement are that the

defendant used a gun in commission of one of the crimes included in the statute (manslaughter is one of the crimes).  Idaho Code § 19-2520.

"An unlawful killing is either murder or manslaughter, and can neither be justified or excused."  *State v. Copenbarger*, 16 P.2d 383 (Idaho 1932).[7]  Under the theory of self-defense, a person has the right to defend himself from "the infliction of great bodily injury," but "the exercise of that right must be grounded upon a reasonable apprehension of imminent harm, and a reasonable belief that the killing is necessary to protect against such injury."  *State v. Carter*, 655 P.2d 434, 436 (Idaho 1981) (citing Idaho Code § 18-4009;[8] *People v. Pierson*, 3 P. 688 (1884)).[9]  Under a theory of mistake, homicide is excusable in the following cases: (1) "When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent"; or (2) "When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat when no

---

[7]  In other words, under Idaho law, a killing is not unlawful if excused or justified. Therefore, for habeas corpus purposes, the theory of self-defense fits within the actual innocence exception that is based on factual innocence, not mere legal innocence.  *See Jaramillo v. Stewart*, 340 f.3d 877, 882-83 (9th Cir. 2003) (same conclusion under Arizona law).

[8]  Idaho Code § 18-4009, entitled, "Justifiable homicide by any person," provides, in pertinent part:

> Homicide is also justifiable when committed by any person . . . [w]hen resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person."

[9]  *State v. Carter* was overruled on other grounds not relevant here by *State v. Smith*, 786 P.2d 1127, 1131 (Idaho 1990) (clarifying that failure to object to an instruction at trial in a criminal case does not constitute a waiver of any objection to the instruction on appeal).

**MEMORANDUM DECISION AND ORDER  31**

undue advantage is taken nor any dangerous weapon used, and when the killing is not done in a cruel or unusual manner."  Idaho Code § 18-4012.

Therefore, under the *Smith v. Baldwin* analysis, to pass through the *Schlup* actual innocence gateway, Petitioner must prove that it is more likely than not that all reasonable jurors would have found him not guilty based on his affirmative defense of self-defense or mistake.  *See Smith v. Baldwin*, 510 F.3d at 1140.

Petitioner's claim is based upon the following set of facts.  During investigation of the case, one eyewitness, Brent Leonard ("Brent"), who was a friend of the victim, conspired with another eyewitness, Sarah Moriarity ("Sarah"), to withhold from investigators the fact that victim Cameron Davis punched Petitioner in the face shortly before Petitioner shot Davis.  Brent omitted the punch from his statements to investigators and the grand jury.  Sarah omitted the punch from her unsworn statements to police and investigators but included the punch in her sworn testimony before the grand jury and at sentencing.  Evidence of the *conspiracy* was first discovered at the sentencing hearing on cross-examination, when defense counsel pointed out to Sarah that her grand jury testimony had been different from her statements to investigators.  Sarah responded that she omitted the punch because she did not want Petitioner to get away with the killing. (State's Lodging C-16, p. 343.)

Respondent first argues that Petitioner's evidence is not *new* because defense counsel knew *prior* to the time Petitioner pled guilty that Sarah's different versions of the

story had discrepancies.  However, because the *conspiracy* that motivated the differing versions was *not* known at the time Petitioner pled guilty, the Court will deem it new evidence under *Schlup*.

Therefore, the Court will analyze whether, within the elements of Petitioner's defense, he can show that it is more likely than not that no reasonable juror would have found Petitioner guilty of voluntary manslaughter.  First, Petitioner must show that, under the circumstances, there was the potential for "the infliction of great bodily injury" by the victim to Petitioner's body.  Second, Petitioner must bring forward facts showing that the shooting of  the victim was "grounded upon a reasonable apprehension of imminent harm."  Third, he must bring forward facts showing he had a "reasonable belief that the killing [was] necessary to protect against such injury."[10]

Sarah testified at the grand jury hearing that the victim (Davis) pushed Petitioner first, Petitioner pushed the victim, the victim punched Petitioner in the face, Petitioner pushed the victim, the victim threw beer on Petitioner, and then Sarah saw flashes from the gun "[r]ight after, it seemed like the beer hit [Petitioner]."  (State's Exhibit C-17, pp. 63-66.)   As noted above, this differed from testimony made to police, a detective, and a defense investigator, where she testified about the same sequence of events but omitted the punch.  (State's Exhibit C-16, pp. 336-37.)

---

[10]  A pure "mistake" theory is implausible because Petitioner used a dangerous weapon upon a sudden combat, which is specifically disallowed by the statute.  Idaho Code § 18-4012(2). Rather, Petitioner's defense seems to be a combination of self-defense and mistake.

**MEMORANDUM DECISION AND ORDER  33**

Brent testified at the grand jury hearing that Petitioner and a black man (Saam Motlagh) approached the victim, and the black man started nudging the victim on the shoulder and saying, "Hey, what are you doing here?  This ain't your kind of party." (State's Exhibit C-17, pp. 84-85.)   Brent testified that Petitioner said something to the victim, and then the victim threw beer on Petitioner.  He then testified that "like within eight seconds" Petitioner pulled out a gun and shot the victim.  (*Id*., p. 85.)  Later, when asked if he had seen the victim throw a punch, he testified that he did not, but it could have happened and he just did not see it.  (*Id*., p. 87.)

Later, when asked whether he had seen any kind of scuffle between the victim and Petitioner or whether he saw the victim take a swing at Petitioner, Brent testified as follows:

> Like I said, there was no fight.  I mean, it was, like–it was from when he–from when the black male approached him, you're looking at, like, ten seconds from when the first shot was fired.
>
> There was enough time for him to do this, [the victim] to throw a beer, and, then, [Petitioner] just grabbed and started shooting.  There wasn't any, like, altercation.  There wasn't, like, wrestling on the ground or wasn't these guys going like this for a while.  It was just (snaps fingers) like that.

(*Id*., pp. 94-95.)

Paul Leonard ("Paul"), Brent's brother, also witnessed the altercation.  There is no evidence in the record that Paul was involved in the conspiracy to hide the victim's punch from investigators.  Paul told Petitioner's investigator, James Weaver, about the punch. (State's Exhibit A-2, internal exhibit no. GGG.)  Leonard testified at the sentencing

hearing that there was no pushing, and the sequence of events was the victim threw beer on Petitioner, the victim punched Petitioner, and then Petitioner shot the victim (slightly different from Sarah's testimony).  (State's Lodging C-6, p. 368-69.)

Petitioner's version of events ("typed verbatim from the presentence investigation questionnaire") is found in the presentence report.  (State's Lodging A-2.)  Petitioner states that the victim blew smoke on him through a hole in a wall.  Petitioner later walked around and confronted the victim.  Petitioner states that he and the victim exchanged words, and that the victim said to him "I'm a murderer," and that the victim told Saam, "I'm going to shank your friend," meaning that the victim was going to stab Petitioner.  (*Id.*, at p. 5.)

At that point, Petitioner said that the victim pushed him, and then Saam attempted to separate them by pushing the two apart.  Petitioner then states that the victim threw beer on him with the victim's right hand.  Petitioner further stated:

> After Cameron Davis threw the beer on me he continued with his right hand and made a motion that appeared to be reaching for a weapon on his waistline.  At this same time I saw something metallic catch the light in the region that he was reaching for and I thought that he was following through with his threat to "shank" me.
>
> *   *   *
>
> In response to Cameron Davis's threat and my perception of an imminent threat to my life, I drew my firearm with my right hand.  As a I drew the firearm, I made a conscious decision  to only try to scare Cameron Davis and not harm him in any way.  I aimed at the dividing wall to the north of us in the general direction of the chimney located behind the wall.  I thought this was the safest direction to point the firearm.  I was hoping that by displaying the firearm and showing Cameron Davis that I was armed, he would cease his attack.  As soon as I had produced the firearm, Cameron Davis lunged at

**MEMORANDUM DECISION AND ORDER  35**

me and punched me so hard on the left side of my head that it caused me to stumble into the wall to my right.  At the same time that I was struck on the side of my head, I heard a gunshot.  I knew that I hadn't consciously fired a shot, so I was fearful that Cameron Davis or someone else had shot at me.

(State's Lodging A-2, p. 6.)

The Court concludes that the new evidence of the *conspiracy* between Brent and Sarah to withhold the fact that the victim punched Petitioner shortly before the shooting does *not* show that Petitioner is actually innocent of the voluntary manslaughter conviction in light of the other evidence in the record. The conspiracy bears only on two witnesses' credibility and relates to an issue peripheral to the heart of the self-defense theory.[11]

Petitioner has nothing to corroborate his statement that he believed the victim had or produced a knife prior to the gunshot.  Petitioner has brought forward no evidence showing that the victim had a knife, or that any other witness *thought* they saw the victim produce a knife.  Sarah testified that she did not see a weapon on the victim that night. (State's Lodging C-16, p. 339.)

In addition, Petitioner is the only one who stated that he pulled out the gun *before* the victim punched him, and that the punch made him lose his balance and unintentionally fire the gun.  Sarah and Paul testified that the punch occurred before display of the gun.

---

[11]  Petitioner argues in his supplemental briefing that Brent had influence over Paul and convinced him to testify.  (Docket No. 37.)  Paul testified that he did not have any conversations with Brent about what to say to police and investigators, but Brent told him to voluntarily give a statement so that Petitioner would not get away with the killing.  (State's Lodging C-6, p. 377.)  However, even if Brent influenced Paul, Paul told Petitioner's investigator about the punch prior to the guilty plea *and* Paul testified that there was a punch at the sentencing hearing.

**MEMORANDUM DECISION AND ORDER  36**

In addition, Petitioner's story is internally inconsistent.  He stated that the victim threw beer with his right hand and then quickly reached down for a knife with the same hand.  However, the victim still would have been holding the beer container with his right hand.[12]

Importantly, *whether the victim threw a punch at all* is only slightly relevant to the elements of Petitioner's self-defense theory that he had a reasonable apprehension of imminent harm and was protecting himself from the infliction of great bodily injury.  The most important event that permitted Petitioner to be able to take advantage of the self-defense theory was the belief that the victim had a knife and reached for the knife before Petitioner displayed the gun.  And even more attenuated from Petitioner's self-defense theory is the new evidence that witnesses failed to tell investigators a punch was thrown *because of a conspiracy to obtain a conviction*.  Rather, the news of a conspiracy to withhold information that the victim punched Petitioner is relevant to the element of whether there was mutual combat--which would reduce the second degree murder charge to voluntary manslaughter (but not show Petitioner is actually innocent), but not to the

---

[12]  Sarah testified that the victim splashed the beer, but did not throw the can.  (See State's Lodging C-16, p. 312.)  Paul told the defense investigator that the beer was in a cup, but the cup was not thrown, just the beer, and he remembers the victim having a beer in his hand after he was shot.  (State's Lodging A-2, internal exhibit no. GGG, pp. 1-12; State's Lodging C-6, p. 369.)  Paul also stated when the victim fell, there was a beer can by him, and Paul does not know how it got there.  (*Id*., p. 10.)  Contrary to Petitioner's statement, Paul testified that the victim threw the beer with the left hand, and then immediately punched Petitioner on the left side of the head with his right hand, which makes logical sense, while Petitioner's story does not.  (State's Lodging C-6, p. 369.)

**MEMORANDUM DECISION AND ORDER  37**

element that Petitioner reasonably thought he was in imminent danger justifying the use of

a firearm--which is relevant to the self-defense theory (and actual innocence here).

Petitioner's new evidence of innocence is not "so strong that [the Court] cannot have

confidence in [the guilty plea]." *See Schlup*, 513 U.S. at 316. Nor can the Court conclude

that it is more likely than not that all reasonable jurors would have found Petitioner not

guilty upon the totality of the evidence. *See Smith v. Baldwin*, 510 F.3d at 1140.

Before Petitioner pled guilty, Petitioner and his counsel knew that Sarah had

spoken  differently about whether a punch occurred at the grand jury hearing and during

the investigation.  The only surprise at the sentencing hearing was that Brent had told her

to omit the information about the punch to investigators.  The motive behind the difference

in her testimony does not have anything to do with whether Petitioner was more or less

reasonable in his belief that the victim had a knife and was about to "shank" him.

Respondent articulated this point as follows:

> Olsen has not shown how his (presumptively) new-found ability to impeach
> the credibility of Sarah Moriarity and Brent Leonard could have had any
> impact on a jury determination about whether Olsen "consciously" or
> "unconsciously" shot Davis.  The question of whether Olsen consciously
> fired the shot that killed Davis is simply not answered by the fact that
> Moriarity and Leonard agreed to conceal Davis' punch from investigators.

(Respondent's Brief, p. 18, Docket No. 36.)

Because Petitioner has not shown that he meets the actual innocence standard, the

procedural default of his clams is not excused.  Therefore, the procedurally defaulted

claims shall be dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER  38**

## STANDARD OF LAW FOR REVIEW OF THE MERITS

Given Petitioner's status as a pro se litigant, the Court provides the following habeas corpus standards of law.  Petitioner bears the burden of proving that the state court judgment either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Section 2254(d)(1) has two clauses, each with independent meaning.  For a decision to be "contrary to" clearly established federal law, the petitioner must establish that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent."  *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

To satisfy the "unreasonable application" clause, the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case."  *Williams*, 529 U.S. at 413.  A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable.  *Lockyer v. Andrade*,

538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).  The state court need not

cite or even be aware of the controlling United States Supreme Court decision to be

entitled to AEDPA deference.  *Early v. Packer*, 537 U.S. 3, 8 (2002).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the

decision was based upon factual determinations that were "unreasonable in light of the

evidence presented in the State court proceeding."  *Id*.

Under all circumstances, state court findings of fact are presumed to be correct, and

the petitioner has the burden of rebutting this presumption by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1).

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for

Summary Dismissal (Docket No. 12) is GRANTED in part and DENIED in part.  Claims

3, 4, 5, 6, 8, 9, 11, 12, 13, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 are

procedurally defaulted and subject to dismissal.  Petitioner may proceed to the merits of

Claims 1, 2, 7, 10, 14, 15, 20, and 32.  Petitioner is notified that no appeal is ripe until all

claims have been ruled upon in a subsequent order and a judgment is entered.

IT IS FURTHER HEREBY ORDERED that Respondent shall file an answer to the

remaining claims no later than **May 28, 2010**, and a motion for summary judgment on the

remaining claims no later than **July 30, 2010.**  Petitioner's response shall be due no later

than **August 31, 2010.**  Any reply shall be due no later than **September 17, 2010.**  In

addition, Petitioner may file a brief showing prejudice for any procedurally defaulted claims for which the ineffective-assistance-of-counsel-on-direct-appeal claim constitutes "cause" by **August 31, 2010**, and Respondent may file any response by **September 17, 2010.**

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Extension of Time (Docket No. 24) is GRANTED.  Petitioner's briefing is considered timely filed.

IT IS FURTHER HEREBY ORDERED that Respondent's Motions to Exceed the Page Limits (Docket Nos. 31 & 35) are GRANTED.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Leave to File Supplemental Response (Docket No. 37) is GRANTED.  The Court has considered the supplemental response contained in Docket No. 37.

SO ORDERED.

DATED:  **March 29, 2010**

~~Honorab~~le Edward J. Lodge
U. S. District Judge